# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **LARONDA ELIOPULOS** | : | **Case No:** 1:21-cv-18 |
| c/o Godbey Law LLC | : | |
| 708 Walnut Street, Suite 600 | : | **Judge:** |
| Cincinnati, Ohio 45208 | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -vs- | : | |
| | : | |
| **GREAT AMERICAN LIFE** | : | |
| **INSURANCE COMPANY** | : | |
| 301 E. Fourth St. | : | |
| Cincinnati, Ohio 45202 | : | |
| | : | |
| Defendant. | : | |

---

## COMPLAINT WITH JURY DEMAND

---

Laronda Eliopulos states the following for her Complaint against Great American Life Insurance Company:

### INTRODUCTION

1.     This action arose after Defendant Great American Life Insurance Company engaged in discriminatory practices against a loyal senior employee who had served the company for over 34 years. Defendant fosters and environment that discriminates against employees who exercise their rights under the FMLA, ADA, and Title VII and retaliates against senior managers who stand up and protests these discriminatory practices.  Likewise, Defendant consciously engages in discriminatory wage practices so that its male senior employees earn more than its female senior employees who do substantially the same work. Plaintiff Laronda Eliopulos admirably worked her way up the ranks of Defendant's corporate structure from a mail clerk to a

1

senior manager reporting directly to a divisional vice president. However, when Ms. Eliopulos stood up to Defendant's blatant discriminatory practices, culture of racism, and unfair payment of women she was unlawfully ousted from a company she worked at for over 34 years.

## PARTIES

2.     Plaintiff Laronda Eliopulos ("Ms. Eliopulos" or "Plaintiff") is a resident of West Chester Township, Ohio. Plaintiff's claims arose out of an employment relationship with Great American Life Insurance Company.

3.     Great American Life Insurance Company ("Defendant") is a corporation registered with the Ohio Secretary of State doing business in Hamilton County, Ohio.  Defendant employs over 1500 employees and engages in interstate commerce.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction to hear this case under 28 U.S.C. § 1331 because Ms. Eliopulos asserts claims arising under the Family and Medical Leave Act ("FMLA"), the Americans With Disabilities Act ("ADA"), the Equal Pay Act of 1963 ("EPA"), Age Discrimination in Employment Act of 1967 ("ADEA"), and Title VII of the Civil Rights Act of 1964 ("Title VII").

5.     Ms. Eliopulos also states claims under the laws of the State of Ohio.  These claims are inherently related to the other claims in this case, over which this Court has original jurisdiction, that they are a part of the same case or controversy under Article III of the United States Constitution.  Accordingly, this Court has supplemental jurisdiction of these claims under 28 U.S.C. § 1367.

6.      Venue is proper in this Court because the transactions and occurrences occurred in Cincinnati, Ohio.

7.      Ms. Eliopulos timely made a claim with the Equal Employment Opportunity Commission and received a right to sue letter.

8.      Ms. Eliopulos has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

## BACKGROUND FACTS

9.      Ms. Eliopulos diligently and competently worked for Defendant for over 34 years.

10.     Ms. Eliopulos started working as a mail clerk for Defendant in approximately 1984 when its corporate headquarters was in California.

11.     Defendant quickly realized Ms. Eliopulos' potential and promoted her.

12.     Over the next 34 years of service, Defendant repeatedly promoted Ms. Eliopulos and even asked her to move to Cincinnati when the company headquarters moved from California to Cincinnati.

13.     Defendant eventually promoted Ms. Eliopulos to its management team.

14.     Ms. Eliopulos was a member of Defendant's management team for over 21 years.

15.     Defendant terminated Ms. Eliopulos in November of 2019 when she was almost 60 years old.

16.     Defendant habitually provided Ms. Eliopulos high performance reviews.

17.     Defendant often approached Ms. Eliopulos when there was a problem and gave the project to her because of her strong work ethic and work product.

18.     Ms. Eliopulos was overly qualified for her position and would often receive accolades and praises from her coworkers and supervisors.

19.     For example, recently Defendant awarded Ms. Eliopulos the Spotlight award in April of 2019, the Major System Enhancement award, and the 2019 E&Y best presentation.

20.     In addition, Ms. Eliopulos' team, that she managed, successfully processed 5.3 billion in 2018 and broke three record premium days in the fall of 2018.

21.     Thus, Ms. Eliopulos was qualified for her position and repeatedly met and exceeded Defendant's expectations.

22.     Defendant uses a level to determine an employee's rank, pay, and benefits. The higher the number the higher the rank, pay, and benefits.

23.     When Defendant terminated Ms. Eliopulos, she was a level 115 senior manager in Defendant's Annuities Operation division.

24.     Defendant promoted Ms. Eliopulos to a "Senior Manager" in approximately 2010 or 2011.

25.     Ms. Eliopulos reported to Keith Seger ("Mr. Seger") a white male and a Division Vice President.

26.     Ron Moll Director of New Business is a white male who also reported to Mr. Seger. Ron Moll is a level 117.

27.     Adam Schneider is also a white male who reported to Mr. Seger. Adam Schneider had a higher level than Ms. Eliopulos.

28.     Ron Moll and Adam Schneider had the same job responsibilities, engaged in substantially the same job functions as Ms. Eliopulos, and reported directly to Mr. Seger yet they were both a higher level and received higher pay than Ms. Eliopulos.

29.     In fact, Adam Schneider had white male employees who reported to him that were a higher level than Ms. Eliopulos.

30.     Ms. Eliopulos was the only female non-white manager in her division.

31.     Ms. Eliopulos' male peers or counterparts doing substantially the same job functions in other divisions were a higher level and received higher pay than Ms. Eliopulos.

32.     Additionally, Ms. Eliopulos was the only female in the management department that was never promoted.

33.     Simply stated, Ms. Eliopulos was the only level 115 with her job responsibilities. Every other person in the company doing the same or similar tasks as Ms. Eliopulos had a higher level and higher pay than Ms. Eliopulos.

34.     Defendant fosters an environment that suppresses women and minorities and punishes those who attempt to stand up to Defendant's discriminatory practices.

35.     For example, Ms. Eliopulos filed a grievance with Defendant's HR department because Ms. Eliopulos' manager had a difficult time understanding her "accent" and because of the accent Ms. Eliopulos' manager attempted to demote her.

36.     Likewise, shortly before Defendant terminated Ms. Eliopulos, one of Ms. Eliopulos' employees complained that she did not like the way her coworker spoke. This coworker was a black coworker who tended to speak in African American Vernacular English AAVE. Ms. Eliopulos attempted to report this blatantly raciest comment to Mr. Seger, but he failed to take any corrective actions. Mr. Seger treated Ms. Eliopulos with hostility because of the complaint.

37.     In addition, when one of Defendant's employees sent racially insensitive emails, Ms. Eliopulos again attempted to raise this concern to Mr. Seger and was met with hostility.

38.     Mr. Seger and Defendant did not take complaints of racial discrimination seriously.

39. This was a surprise and a disappointment to Ms. Eliopulos because Defendant was allowing an environment of racism to foster.

40. Mr. Seger cultivated a nepotistic environment that provided preferential treatment to blood relatives.

41. In fact, Mr. Seger forced Ms. Eliopulos to hire one of his own relatives who was utterly unqualified for the position.

42. Mr. Seger also gave preferential treatment to Ms. Eliopulos' subordinate, Sheena Volk.

43. Mr. Seger on numerous occasions prevented Ms. Eliopulos from disciplining Sheena Volk regarding her attendance and performance. During performance appraisal time, Mr. Seger would increase Ms. Volks salary when not warranted overall performance.

44. Ms. Eliopulos complained to Defendant's HR department regarding Mr. Seger's lack of action and his promotion of racism.

45. Shortly after this complaint, Mr. Seger threatened to terminate Ms. Eliopulos.

46. In a meeting with Mr. Seger, Ms. Eliopulos informed Mr. Seger that she wanted to foster an environment that allows all associates the ability to speak their mind regardless of their nationality, gender, age, or culture without retaliation and she was met with absolute anger and hostility.

47. Mr. Seger was so upset he abruptly ended the meeting and refused to speak with Ms. Eliopulos.

48. Shortly after this meeting, Ms. Eliopulos again emailed Defendant's HR department and complained about Mr. Seger's racial discrimination and hostile work environment.

49.     The following week, Ms. Eliopulos attended a routine physical exam, and her doctor noted dangerous heart conditions, weight loss, and severe anxiety.

50.     Ms. Eliopulos' doctor mandated that she take FMLA leave because of her dangerous heart conditions and anxiety.

51.     Ms. Eliopulos complied with all the FMLA's reporting and documentation processes.

52.     Ms. Eliopulos' doctor never released her to return to work.

53.     Instead, Defendant interfered with Ms. Eliopulos' FMLA rights and forced her to return to work when she still had days available on her FMLA leave.

54.     Three days after Defendant forced Ms. Eliopulos to return to work, it placed her on a performance improvement plan.

55.     According to Mr. Seger, part of the reason that Defendant placed Ms. Eliopulos on this plan was because she complained to HR about Mr. Seger and his lack of remedial actions to remedy the culture of racism.

56.     Mr. Seger wrote in a corrective action memo the reason Defendant was disciplining Ms. Eliopulos and preparing to terminate her was because of her complaints and accusations she made to Defendant's HR department about him regarding race, gender, and national origin discrimination.

57.     Within weeks of complaining about racial harassment and taking FMLA leave, Defendant terminated Ms. Eliopulos.

58.     Defendant's bogus reason for terminating Ms. Eliopulos was false.

59.     Ms. Eliopulos suffered damages and will continue to suffer damages in the future because of Defendants actions.

## CLAIMS

### COUNT I
### FMLA Interference Under 29 U.S.C. §2615

60. Ms. Eliopulos restates and incorporates all paragraphs.

61. Ms. Eliopulos was qualified for FMLA leave and Defendant is an employer covered by the FMLA's regulations.

62. Ms. Eliopulos suffered from dangerous heart conditions and severe anxiety.

63. Because of her dangerous heart conditions and severe anxiety Ms. Eliopulos was unable to perform the functions of her job.

64. Ms. Eliopulos' health conditions were serious and required time to regulate under her doctor's supervision.

65. In addition, leave was needed because Ms. Eliopulos needed to perform follow up doctors' visits and additional treatments to regulate her stress, anxiety, and heart conditions.

66. Ms. Eliopulos informed Defendant of this unforeseeable illness and requested FMLA leave.

67. Ms. Eliopulos provided Defendant with a note from her doctor verifying her need to take FMLA leave.

68. Ms. Eliopulos started FMLA leave but was not allowed to finish it.

69. Defendant mandated that Ms. Eliopulos return to work even though her doctor did not release her to return to work.

70. Ms. Eliopulos still had time remaining on her FMLA leave.

71. Thus, Defendant interfered with and restrained Ms. Eliopulos' attempt to exercise FMLA leave.

72. Defendant's actions were malicious and in a conscious disregard of the rights of Ms. Eliopulos.

73. Ms. Eliopulos suffered damages and will continue to suffer damages in the future because of Defendant's interference with her rights to take FMLA leave.

74. Ms. Eliopulos is entitled to all damages and injunctive relief permissible under the FMLA.


**COUNT II**
**FMLA Retaliation and Discrimination under 29 U.S.C. §§2614-15**

75. Ms. Eliopulos restates and incorporates all paragraphs.

76. Ms. Eliopulos requested FMLA leave for dangerous heart conditions and severe anxiety.

77. Ms. Eliopulos notified Defendant of the serious health condition that made her unable to perform her essential job functions.

78. Ms. Eliopulos was qualified for FMLA leave.

79. Defendant retaliated against Ms. Eliopulos for requesting and taking FMLA leave.

80. Defendant even forced Ms. Eliopulos to return to work when she had not received a doctor's release to return to work.

81. Defendant terminated Ms. Eliopulos just over four weeks after returning from FMLA leave.

82. Defendant terminated Ms. Eliopulos because she exercised her rights under the FMLA.

83. This was not the first time Defendant terminated someone for having a disability and using FMLA.

84.     In fact, Mr. Seger forced Ms. Eliopulos to find a reason to terminate one of her employees because he had documented medical issues involving his intestines and required accommodations to use the restroom more frequently.

85.     This employee was qualified for his position and performed well.

86.     Mr. Seger informed Ms. Eliopulos that he did not like the smell this employee was causing and did not like that the employee had to use the restroom several times a day.

87.     Ms. Eliopulos disputed Mr. Seger's attempt to violate this employee's rights under the FMLA and ADA and was met with hostility.

88.     Defendant did eventually force Ms. Eliopulos to terminate this employee because of his disability and his need to take intermittent FMLA.

89.     Defendant's actions were malicious and in a conscious disregard of the rights of Ms. Eliopulos.

90.     Ms. Eliopulos suffered damages and will continue to suffer damages because of Defendant's retaliation and discrimination.

91.     Ms. Eliopulos is entitled to all damages and injunctive relief permissible under the FMLA.


**<u>COUNT III</u>**
**Disability Discrimination**
**Under the Americans with Disabilities Act 42 U.S.C. § 12101 et seq**

92.     Ms. Eliopulos restates and incorporates all paragraphs.

93.     The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee

compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

94.    Because Ms. Eliopulos' dangerous heart conditions and anxiety substantially limits at least one of her major life activities, she is an individual with a disability under the ADA.

95.    Ms. Eliopulos was fully qualified for her position and she could perform all the essential functions of the position.

96.    Defendant is a covered employer to which the ADA applies.

97.    Defendant terminated Ms. Eliopulos from her employment solely because Ms. Eliopulos had a disability or because Defendant perceived or regarded Ms. Eliopulos as having a disability.

98.    Ms. Eliopulos was ready, willing, and able to perform her job duties when she returned to work from FMLA leave.

99.    Defendant made no individualized assessment to determine whether Ms. Eliopulos could perform her essential job functions or whether a reasonable accommodation would enable her to be employed.

100.    Defendant's termination of Ms. Eliopulos based on her disability or perceived disability and Defendant's failure to make an individualized assessment to determine whether Ms. Eliopulos could be employed or whether a reasonable accommodation would enable her to be employed by Defendant violated the ADA.

101.    As a result of Defendant's actions, Ms. Eliopulos has suffered and will continue to suffer both economic and non-economic damages.

102.    Defendant terminated Ms. Eliopulos because she had a disability.

11

103.    Defendant's actions were malicious and in a conscious disregard of the rights of Ms. Eliopulos.

104.    Ms. Eliopulos is entitled to all damages and injunctive relief permissible under the ADA.


**COUNT IV**
**Retaliation Under the Americans with Disabilities Act**

105.    Ms. Eliopulos restates and incorporates all paragraphs.

106.    The ADA provides: "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

107.    Within weeks of Ms. Eliopulos informing Defendant of her disabilities, Defendant terminated her.

108.    Defendant terminated Ms. Eliopulos because she requested accommodations to take off work to allow time for her dangerous heart conditions to regulate and for her to manage her anxiety.

109.    This was not the first time Defendant terminated someone for having a disability and using FMLA.

110.    In fact, Mr. Seger forced Ms. Eliopulos to find a reason to terminate one of her employees because he had documented medical issue involving his intestines and required accommodations to use the restroom more frequently.

111.    This employee was qualified for his position and performed well.

112.    Mr. Seger informed Ms. Eliopulos that he did not like the smell this employee was causing and did not like that the employee had to use the restroom several times a day.

113.    Ms. Eliopulos disputed Mr. Seger's attempt to violate this employee's rights under the FMLA and ADA and was met with hostility.

114.    Defendant did eventually force Ms. Eliopulos to terminate this employee because of his disability and his need to take intermittent FMLA.

115.    Because of Defendant's retaliation, Ms. Eliopulos has suffered and will continue to suffer both economic and non-economic damages.

116.    Ms. Eliopulos is entitled to all damages and injunctive relief permissible under the ADA.

### COUNT  V
### Racial Discrimination Under Title VII of the Civil Rights Act of 1964

117.    Ms. Eliopulos restates and incorporates all paragraphs.

118.    Ms. Eliopulos is from Barbados and she identifies her race as African Caribbean.

119.    Ms. Eliopulos was at all times qualified for her position.

120.    Defendant's  conduct created a hostile work environment based on Ms. Eliopulos' race.

121.    In fact, Ms. Eliopulos' manager would constantly berate her and treat her negatively but he treated the other non-minority employees differently.

122.    Likewise, Ms. Eliopulos complied to Defendant's HR department regarding racially insensitive comments and no actions were taken.

123.    Defendant failed to promote Ms. Eliopulos to the appropriate level as compared to her non-white counterparts.

124.    All of Ms. Eliopulos' white male counterparts were a higher level and received higher benefits than Ms. Eliopulos.

125.    Defendants' comments and actions would be intimidating, hostile, or offensive to reasonable people.

126.    Ms. Eliopulos' was required to endure Defendant's racist culture as a term and condition of her employment.

127.    Ms. Eliopulos suffered emotional distress due to the severe nature of the hostile work environment.

128.    Defendant took no prompt remedial action to prevent Defendant's known racially insensitive conduct.

129.    Defendants actions were severe and pervasive.

130.    Defendant's actions were willful and in a conscious disregard of the rights of Ms. Eliopulos.

131.    As a direct and proximate result of the discrimination, Ms. Eliopulos has sustained, and will continue to sustain, economic, and emotional injuries.

132.    Ms. Eliopulos is entitled to all damages and injunctive relief permissible under Title VII.

133.    As a result of Defendant's actions, Ms. Eliopulos has been harmed.


### COUNT VII
**National Origin Discrimination Under Title VII of the Civil Rights Act of 1964**

134.    Ms. Eliopulos restates and incorporates all paragraphs.

135.    Title VII prohibits employment practices that discriminate against persons based on their national origin.

136.    Ms. Eliopulos is from Barbados.

137.    At one point during Ms. Eliopulos' employment,  one of her managers attempted to demote her because of her accent.

138.    Defendant failed to promote Ms. Eliopulos to the appropriate level as compared to her American counterparts.

139.    Defendant failed to correct employees who harassed other employees who spoke in an accent.

140.    Defendant's actions were willful and in a conscious disregard of the rights of Ms. Eliopulos.

141.    As a direct and proximate result of the discrimination, Ms. Eliopulos has sustained, and will continue to sustain, economic, and emotional injuries.

142.    Ms. Eliopulos is entitled to all damages and injunctive relief permissible under Title VII.

143.    As a result of Defendant's actions, Ms. Eliopulos has been harmed.


### COUNT  VIII
### Discrimination Under the Equal Pay Act 29 U.S.C. § 206(d)

144.    Ms. Eliopulos restates and incorporates all paragraphs.

145.    The Equal Pay Act prohibits sex-based wage discrimination.

146.    Ms. Eliopulos worked in a division where she had several male counterparts.

147.    Ms. Eliopulos' male counterparts had substantially the same job duties, responsibilities, and reporting supervisor as her.

148.    Ms. Eliopulos had the same or higher skills than her male counterparts.

149.    Ms. Eliopulos' male counterparts performed their jobs under similar working conditions.

150.    In fact, Ms. Eliopulos would attend meeting to present on her team's projects and progress and she was the only level 115 in the room. The rest of the room had higher ranking white males. This was demoralizing to Ms. Eliopulos because her counterparts were all higher ranking and higher paid white males doing substantially the same work as Ms. Eliopulos.

151.    Ms. Eliopulos was paid a lower wage than the male employees doing substantially equal work.

152.    The differential in pay between male and female employees was not due to a bona fide seniority system, a bona fide merit system, or a bona fide system that measures employee earnings by quantity or quality of work, nor was the difference in pay a result of a factor other than sex.

153.    Defendant caused, contributed to, or caused the continuation of wage rate discrimination based on sex, in violation of the Equal Pay Act.

154.    Defendant's actions were willful and in a conscious disregard of the rights of Ms. Eliopulos.

155.    As a direct and proximate result of the discrimination, Ms. Eliopulos has sustained, and will continue to sustain, economic, and emotional injuries.

156.    Ms. Eliopulos is entitled to all damages and injunctive relief permissible under the EPA.

157.    As a result of Defendant's actions, Ms. Eliopulos has been harmed.

## <u>COUNT IX</u>
## RETALIATION UNDER TITLE VII

158.  Ms. Eliopulos restates and incorporates all paragraphs.

159.  Ms. Eliopulos was qualified for her position.

160.  Ms. Eliopulos made informal and formal complaints to Defendant's agents and employees opposing Defendants' unlawful discriminatory employment practices based on national origin, gender, and race.

161.  Ms. Eliopulos reported Defendant's unlawful behavior to her supervisor and to Defendant's HR department.

162.  Ms. Eliopulos' belief that Mr. Seger's behavior constituted national origin, gender, and racial discrimination was reasonable and in good faith.

163.  As a result of Ms. Eliopulos' complaints, Defendant's agents and employees took materially adverse actions against her, including, issuing disciplinary warnings, threats of termination, and reprimands by her supervisors.

164.  Defendant's adverse actions constituted retaliatory workplace harassment.

165.  Within weeks of complaining about racial, gender, and national origin discrimination, Defendant terminated Ms. Eliopulos.

166.  Ms. Eliopulos was humiliated, economically damaged, and suffered emotional distress.

167.  Defendant's actions were willful and in a conscious disregard of the rights of Ms. Eliopulos.

168.  As a direct and proximate result of the discrimination, Ms. Eliopulos has sustained, and will continue to sustain, economic, and emotional injuries.

169.    Ms. Eliopulos is entitled to all damages and injunctive relief permissible under Title VII.

170.    As a result of Defendant's actions, Ms. Eliopulos has been harmed.

## COUNT X
### GENDER DISCRIMINATION UNDER  R.C. § 4112

171.    Ms. Eliopulos restates and incorporates all paragraphs.

172.    Ms. Eliopulos is a woman and a member of a protected class.

173.    Ms. Eliopulos was qualified for her position.

174.    Ms. Eliopulos suffered an adverse employment decision and was discriminated against because of her gender.

175.    Ms. Eliopulos was humiliated, economically damaged, and suffered emotional distress.

176.    Defendant acted maliciously and with a conscious disregard for Ms. Eliopulos' rights.

177.    Ms. Eliopulos is entitled to all damages and injunctive relief permissible under Title VII.

## COUNT XI
### Retaliation Under R.C. § 4112

178.    Ms. Eliopulos restates and incorporates all paragraphs.

179.    Ms. Eliopulos made informal and formal complaints to Defendant's agents and employees opposing Defendants' unlawful, discriminatory employment practices based on her gender.

180.     Ms. Eliopulos reported Defendant's unlawful behavior to her supervisor and to Defendant's HR department.

181.     Ms. Eliopulos' belief that Mr. Seger behavior constituted gender discrimination was reasonable and in good faith.

182.     As a result of Ms. Eliopulos' complaints, Defendant's agents and employees took materially adverse actions against her, including, issuing disciplinary warnings, threats of termination, and reprimands by her supervisors.

183.     Defendant's adverse actions constituted retaliatory workplace harassment.

184.     Within weeks of complaining about gender discrimination, Defendant terminated Ms. Eliopulos.

185.     Ms. Eliopulos was humiliated, economically damaged, and suffered emotional distress.

186.     Defendant's actions were willful and in a conscious disregard of the rights of Ms. Eliopulos.

187.     As a direct and proximate result of the discrimination, Ms. Eliopulos has sustained, and will continue to sustain, economic, and emotional injuries.

188.     Ms. Eliopulos is entitled to all damages and injunctive relief permissible under Ohio law.

189.     As a result of Defendant's actions, Ms. Eliopulos has been harmed.


## COUNT XII
**Age Discrimination Under the Age Discrimination in Employment Act of 1967**

190.     Ms. Eliopulos restates and incorporates all paragraphs.

191.     Ms. Eliopulos was almost 60 years old when Defendant terminated her.

192.    Ms. Eliopulos was qualified for her position.

193.    Defendant terminated Ms. Eliopulos because of her age.

194.    Then, Defendant hired a younger less qualified individual to replace her.

195.    This younger employee was significantly less qualified than Ms. Eliopulos.

196.    As a direct and proximate result of the discrimination, Ms. Eliopulos has sustained, and will continue to sustain, economic, and emotional injuries.

197.    Ms. Eliopulos is entitled to all damages and injunctive relief permissible under the ADEA.

198.    As a result of Defendant's actions, Ms. Eliopulos has been harmed.

**WHEREFORE**, Ms. Eliopulos respectfully requests that this Court find for her and award her the following:

      a.  Compensatory damages;

      b.  Reinstatement;

      c.  Lost wages and all other compensation denied or lost to Plaintiff by reason of Defendant's unlawful actions;

      d.  Statutory damages;

      e.  Interest;

      f.  Punitive damages;

      g.  Attorney fees;

      h.  Costs;

      i.  Litigation expenses; and

      j.  All other relief this Court deems proper.

Respectfully Submitted,

*/s/ Robert L. Thompson*
Robert L. Thompson (0098126)
GODBEY LAW LLC
708 Walnut Street, Suite 600
Cincinnati, Ohio 45202
P: 513-241-6650
F: 5153-241-6649
E: Robert@godbeylaw.com
*Attorney for Plaintiff*

## JURY DEMAND

Plaintiff demands a trial by jury on all triable issues.

*/s/ Robert L. Thompson*
Robert L. Thompson (0098126)